Chief Justice Robertson
delivered the Opinion of the Court.
On the 6th of May, 1828, Peter Cox, for the recited consideration of three hundred and twenty-five dollars, delivered, and transferred, by an absolute bill of sale, to Thomas Gray, a negro woman Nelly and her child, of whom he himself had, just before, obtained the possession, in virtue of a decree for restitution, rendered by the Montgomery Circuit Court, on the 19th of September, 1827, on a bill filed against Francis Marshall, who had been, for about five years, in possession of them, under a claim of title derived from a document purporting to be an absolute bill of sale from the said Cox, in 1823, but which the bill in chancery alleged to have been intended to operate only as a security for debts which had since been paid.
In 1831, Nelly having, in the mean time, borne another child, Gray mortgaged her and the two children, to William Alexander, to secure the payment of obligations afterwards assigned to David A. Sayre, who held a subsequent mortgage on the same slaves, and other- things, for a debt due to himself by Gray.
In January, 1829, Marshall’s representatives (he being dead,) prosecuted a writ of error to reverse Cox’s decree for restitution; and this Court having, upon that writ of error, reversed the decree and ordered the dis-mission of Cox’s bill — the Circuit Court accordingly dismissed it absolutely, in June, 1832, and ordered restitution of the slaves to Marshall’s representatives.
In the same month, but after the dismission of the bill, a fieri facias, which had been issued on a judgment obtained, in 1829, by Turner against the representatives of Marshall, was levied on Nelly and her children, who were afterwards, in July, 1832, sold and delivered to B. *227 G. Samuel, as the lushest bidder at the sale under the execution.
Mortgagee alleges that he was in possession of the slave mortgaged, mortgagor, in his answer and cross bill, alleges that he was in possession; a deft, who claims the slave against both, denies the mortgagee’s allegation, but is silent as to the mortgagor’s possession. Held that all this must he understood as meaning a manual possession merely, so no denial of the possession in effect, which results to the mortgagee from the possession held by his mortgagor. Yet, us it is not alleged in the pleadings, and there is no ground to presume, that the actual possession was a fact within the deft’s personal knowledge, the allegation that it was with the mortgagee, cannot be taken as true against him.
A party is in possession of a slave which he purchased at a sheriff’s sale, but under such circumstances that he acquired no title by his purchase; he is then made a def’t to a bill to enforce a mortgage upon the slave: the title of mortgagor and mortgagee proves to be wholly unavailing; but a decree having been rendered in favor of the mortgagee, requiring the purchaser to surrender the slave, he has such interest as will enable him to maintain a w.e. to reverse the decree: for, equity will not aid a party in selling property to which he has no title, even against another in the same predicament — especially, when the latter has a lien on the property. And—
Where a party buys property under ex’on, but, because of adverse possession, &c. acquires no title — if he pays the purchase money, and thereby satisfies, pro tanto, the debt of the def’t, the latter is bound in equity, to reimburse him; if the property is delivered under the sale, the purchaser holds it in trust, with a lien upon it, as against the def’t in the ex’on, for the sum paid for it.
A few days after that sale, Sayre filed a bill in chancery against Gray, Alexander and Samuel, for the purpose of enforcing his own mortgage and that also to Alexander, which had been equitably transferred to himself, by the assignment of the obligations for which it had been given.
Samuel insisted that the transfer from Cox to. Gray, was fraudulent and merely colorable; that the title was in Marshall’s representatives at the time of the sheriff’s sale; that his purchase, at that sale, was fair and valid, and that Sayre had no title. And he also relied on, and exhibited the record of the suit between Cox and Marshall’s representatives, which seems to have been read on the final hearing of this case, in the Circuit Court, without exception.
The Circuit Court having decreed a surrender of the slaves, and a sale of them for Sayre’s benefit, Samuel prosecutes this writ of error to reverse that decree.
In the revision of the decree, two questions are presented for consideration: First. If the decree be erroneous, does Samuel exhibit such an interest or attitude as to entitle him to ask the reversal of it? Second. Is the decree erroneous?
The only objection made, or which can be conceived, to Samuel's right to complain of the decree, if erroneous, is, that his purchase was void, because, as argued, the slaves were, at the time of the sheriff’s levy upon *228 them, in the adverse possession of Sayre or Gray; and that, therefore, Samuel has no interest in them, and had no right to take and withhold the possession of them, even if Sayre and Gray have no available interest in them.
There is no evidence in the record, as to who was in the possession of the slaves at the date of the levy, unless some deduction respecting that fact, may be drawn from the pleadings.
Sayre alleges, in an amended bill, that he was in possession. And Gray, in an answer in the nature of a cross bill against Samuel, avers that he was actually possessed of them when the sheriff made the levy; and Samuel’s answer to the amended and cross bills, does not respond to that allegation by Gray, though it denies that Sayre was in possession. Now, whether, as Gray’s possession as mortgagor, should be deemed that of Sayre, the mortgagee, the denial that Sayre was in possession, should be considered a virtual and sufficient negation of the allegation that Gray was in possession, might be a question of some doubt. But we are inclined to think that, the parties should be understood as intending, in their pleadings, the actual manual possession, and that, therefore, Samuel’s answer should be construed as meaning only that Sayre had not that possession, and as being silent respecting such possession by Gray.
Nevertheless, this interpretation of the answer, would not necessarily lead to the conclusion, that Samuel had admitted that Gray was in possession; because neither is the fact of possession, at the time of the levy, alleged to have been within Samuel’s knowledge, nor is it of such a character as to authorize the judicial presumption that he did know it.
But the execution was issued almost simultaneously with the order for restitution to Marshall’s representatives; it was directed to Fayette, where Gray and Sayre are presumed to have lived; there is no proof or even suggestion that there had been any restitution before the levy; and, from the fact that Gray was no party to the suit between Cox and Marshall’s representatives, the inference that the order had not been executed, is *229 far from being unreasonable. And that deduction is, at least, fortified, in some degree, by the character of Samuel’s answer, in which, when he positively denied that Sayre was in possession, the implication is but rational and just that he knew who was in possession, and therefore did not respond to the averment by Gray, as to his being in the actual possession.
A copy of a record being in a chancery cause, as part of the evidence, and nothing appearing to show that the reading of it, in the court below, was objected to — this court cannot disregard it, or any part of it; it must have its effect here, though not legal evidence against the party to be affected by it.
Admitting, however, that Gray was in the possession, and considering, for the sake of argument at least, that although he had acquired his possession under a contract of purchase during the pendency of the suit between Cox and Marshall’s representatives, it should, nevertheless, be deemed adverse to Marshall’s right: still, although, upon those hypotheses, Samuel’s purchase was illegal and void, he may have a right to complain of the decree directing the surrender; which is the only decree rendered against him. For even though a purchase of such a chose in action vested no title, legal or equitable, yet if Sayre has no right to sell the slaves under his mortgage, he should not be aided by a Court of Equity in disturbing Samuel’s possession, for the sole purpose of effectuating such a sale; and moreover and especially, as Samuel obtained the possession under Marshall’s title, and paid money therefor to the use of Marshall’s representatives; if their title be the only good one, he holds the slaves in trust for them, and as an equitable security for the reimbursement of what he advanced to their use and in consideration of his purchase» If then the decree be erroneous on the ground that the only good title was in Marshall, and that therefore, Gray’s mortgage passed no interest in the slaves to Sayre, Samuel has a right to ask a reversal.
We proceed, therefore, to the only remaining proposition
Second. We are clearly of the opinion that the record show's that, at the time of the sale by the sheriff, as well as at the date of Cox's bill of sale to Gray, and at all times between the year 1823 and the sheriff’s sale, the title to the slaves was in Marshall or his legal represen *230 tatives, and that neither Gray, nor Alexander, nor Sayre, ever had any available right to them.
Evidence that would have been good against the vendor of a slave at the time of the sale, is available against a purchaser or sub-purchaser.
A bill not verified by affidavit should be deemed chiefly the Work of counsel, and therefore, its statements are not evidence against the complianant; but an admission of a 'fact in his answer to a cross bill, is; and tho' the respondent may couple with bis admission, an allegation, that a bill of sale, which be admits was ‘absolute in its terms, was intended as a mortgage only; yet, if there is no proof or allegation, that the bill sale was made absolute by fraud or mistake, it most prevail against the party who made, and admits it;and the allegation of the hill, tho’ not evidence, per se, may fortify that conclusion; and a dismissal of a bill filed to set aside the alleged defeasance, is a a circumstance still more effectual.
*230 To this effect the record of the suit between Cox and Marshall’s representatives, if competent evidence, in this case, would be altogether conclusive. And waiving the question of Us pendens insisted on by Samuel's counsel as applicable, because, as he urges, the suit should be deemed to have been pending, so far as the title to the slaves was involved in it, until it was final! y disposed of by a reversal by this Court, and a dismission of the bill by the Circuit Court — nevertheless, we should feel much difficulty in deciding that the record of that suit is not evidence in this; because it appears to have been used without objection on the hearing in the Circuit Court, and it would be difficult for this Court to decide that any part of it, and, if any, what part was pretermitted.
But if that record be not evidence in this case for any other purpose than to prove the fact, that a decree was finally rendered dismissing Cox’s bill, still there is, in our judgment, enough without it, to show that, prima facie, the title was in Marshall's representatives, and not in Cox, at the time of the sale by the latter to Gray, and that, therefore, the Circuit Court erred in decreeing a sale of the slaves under the mortgage.
Whatever would have been evidence against Cox, when he made the bill of sale to Gray, would be equally effectual against Sayre, who derives all his claim, directly and indirectly, from Gray.
Cox's bill against Marshall's representatives is not, alone, sufficient proof of his absolute bill of sale, in 1823, to Marshall; because, not having been verified by affidavit, it should be deemed to have been chiefly the work of his counsel. But, prior to the sale to Gray, Cox had, under the sanction of an oath, admitted, in an answer to a cross bill, that he had, in 1823, made to Marshall a bill of sale of Nelly, absolute on its face, and that Marshall had, as ostensible owner, enjoyed the possession and use of her ever since. He said, it is true, in the same answer, as he had alleged in his original bill, that, although there was no defeasance in writing, the contract, nevertheless, was intended by the parties as a collateral se *231 curity for money. But, as this answer contains no suggestion of fraud or mistake, the absolute bill of sale, thus admitted, must stand, as it has stood, according to its intrinsic effect, until, by proof of fraud or mistake in the execution of it, its nature, as apparent on its face, shall have been changed; and there is nowhere, in any record before us, either proof or allegation of that kind.
The answer just alluded to, is made still more conclusive evidence as to the existence of the absolute bill of sale to Marshall, by the corresponding allegations in Cox's bill, which, though not evidence per se, may be used as fortifying circumstances, especially when, as in this case, they harmonize so well with the admissions of the same party made on oath.
And the fact that the bill of sale was not only absolute, but passed the title, as well as the possession, from Cox to Marshall, is still more certainly fortified by the final decree dismissing the bill filed for the purpose of establishing an extraneous defeasance.
Then, without looking into the record of the suit between Cox and Marshall's representatives, further than to notice the final decree, we find in this case facts which, being unaffected by any opposing or invalidating circumstances, must be admitted to be sufficient to. prove that, in 1823, Cox had sold and delivered Nelly to. Marshall; and not only is there no evidence tending to, show that, either himself or any person claiming under him, was afterwards ever reinvested with the title thus transferred to Marshall, but the record of this suit, with that against Marshall's representatives, if admissible for no other purpose, is certainly proof of the fact that his bill, filed to set aside or qualify the bill of sale to Maxshall, was finally dismissed, on a final hearing by this Court, on all the facts exhibited by the parties.
In this state of case, it appears that Sayre has no right to Nelly or her children; and therefore, it was erroneous to decree the sale of them for his benefit.
Wherefore, it is decreed that, the decree of the Circuit Court be reversed, and the cause remanded, with instructions to dismiss the bill, so far as it applies to Nelly and her children.